WACHOVIA BANK AND TRUST COMPANY, SUCCESSOR TRUSTEE UNDER THE WILL OF ALEXANDER B. ANDREWS v. F. M. SIMMONS ANDREWS, MARY G. ANDREWS, A MINOR, JOHN W. ANDREWS, A MINOR, SARA SIMMONS ANDREWS, A MINOR, MRS. MARY A. WORTH, JULIA A. WORTH RAY, HAL V. WORTH, III, SIMMONS HOLLADAY WORTH, A MINOR, LAURENCE H. MARKS, JANE A. MARKS, ELIZABETH M. GREEN, JUDGE ALEXANDER A. MARKS, JULIA A. MARKS, A MINOR, FRANCES MARKS BRUTON, RALPH STANLEY MARKS, WILLIAM M. MARKS, III, MRS. JULIA M. DOZIER, RICHARD T. DOZIER, MRS. JANE DOZIER HARRIS, MRS. MARTHA A. WING, SANDRA JOHNSON WALKER, MRS. AUGUSTA A. YOUNG, MRS. ELEANOR Y. BOOKER, MRS. AUGUSTA YOUNG MURCHALL, GRAHAM H. ANDREWS, JR., MRS. JANE V. PHILBRICK, MRS. JULIA A. PARK, S. LEIGH PARK, A MINOR, BRUCE R. PARK, A MINOR, ALEX B. ANDREWS, MABEL Y. ANDREWS, A MINOR, ALEX B. ANDREWS, JR., A MINOR.

(Filed 2 June, 1965.)

1. **Constitutional Law § 23—**

The General Assembly may not diminish a vested interest by artificially increasing the class in which the estate has vested. Constitution of North Carolina, Sec. 17, Art. I, Fourteenth Amendment to the Federal Constitution.

2. **Same—**

While the legislature may create a presumption to be applied in the construction of instruments executed prior to the enactment of the statute, its power to create such presumptions or inferences is not unlimited but it may create only those presumptions or inferences which have some reasonable relation to the facts upon which they arise.

**3. Wills § 27—**
 When the intent of testator can be ascertained with assurance from the language used, there is no need for presumptions or extrinsic evidence, and the court must give effect to the testamentary intent.

**4. Adoption § 6;   Wills § 47—**
 Where the trust provides benefits for named blood relatives of testator with provision that this number could be increased only in the event great nieces and great nephews were born within 21 years after testator's death, the will clearly indicates testator's intent to exclude children adopted by his nieces and nephews from the benefits, and therefore Chapter 967, Session Laws of 1963 (G.S. 48-23) by its express language, does not apply, and the children adopted by testator's nieces and nephews do not take under the will.

APPEAL by Howard E. Manning, guardian *ad litem* for S. Leigh Park, Bruce R. Park, Mabel Y. Andrews and A. B. Andrews, Jr., and any other person who may be adopted by any of the nieces and nephews of A. B. Andrews, deceased, prior to October 21, 1967, from *Carr, J.*, February 1965 1st Non-Jury Civil Session of WAKE.

A. B. Andrews died testate on October 21, 1946. His will, probated in Wake County, gave the residue of his estate to his brothers, John and Graham, as trustees for the beneficiaries named in item 2.

John and Graham, the trustees, died prior to August 20, 1957. On that date, plaintiff was, by order of the Superior Court of Wake County, appointed as successor trustee.

The only portions of the will relevant to this litigation are items 2 and 6, which provide:

 "2.  After the payment of my just debts, and the payment of the specific legacies, hereinafter named, I give, devise, and bequeath the remainder of my estate, of whatsoever kind, character or description, whether real or personal, into the hands of my brothers J. H. Andrews and G. H. Andrews, their successor or successors and associate or associates, as trustee or trustees, to have and to hold and to invest, and sell and re-invest, and manage the same upon the following uses and trusts, that is to say:

 "(a)  After paying the expense of handling the trust, they shall divide the annual income into twenty equal parts or shares which shall be disposed of as set out in items.

 "(b)  One share of the net income shall be annually paid to my sister, Mrs. Jane Marks, 525 S. Perry St., Montgomery, Ala., for and during her natural life.

 "(c)  One share of the net income shall be annually paid to my brother, John H. Andrews, 831 Wake Forest Road, Raleigh, North Carolina, for and during his natural life.

"(d)   One share of the net income shall be paid to my brother, Graham H. Andrews, 421 N. Blount St., Raleigh, North Carolina, for and during his natural life.

"(e)   One share of the net income shall be divided in equal parts, or divisions, and paid to my eleven (11) nieces and nephews; namely, Mrs. Augusta Andrews, Mrs. Martha Andrews Johnson, and Mrs. Jane Virginia Power (the children of my deceased brother William J. Andrews), Mrs. Julia Marks Dozier, Alex A. Marks, and Laurence H. Marks (the surviving children of my sister Mrs. Jane A. Marks), Alexander B. Andrews, III (the son of my brother John H. Andrews), and Mrs. Julia Andrews Park, Mrs. Mary S. Andrews Worth, Graham H. Andrews, Jr., and F. M. Simmons Andrews (the children of my brother Graham H. Andrews) for and during their lifetime.

"(f)   Upon the death of either my sister Jane H. Andrews or my brothers John H. Andrews or Graham H. Andrews, the one share severally allotted to them shall cease, and it shall be allotted to, and added to, the one share to be divided among the eleven (11) living nieces and nephews, which directions shall apply to each of these three shares to my sister and two brothers.

"(g)   Upon the death of anyone of my now living eleven (11) nieces and nephews, his or her share shall cease and the division of this share remaining among the nieces and nephews shall be only to those then alive.

"(h)   When the number of nieces and nephews shall be reduced by death down to four, then the annual share of any one dying thereafter shall not be divided among those surviving, but then such share or shares shall be added to the sixteen shares to be divided among my great nieces and great nephews.

"(i)   The income from the sixteen shares shall be equally divided among my great nieces and nephews, now twelve (12) in number, and those who hereafter may be born within twenty-one (21) years after my death, they to share equally with the others.

"(j)   The share of income allotted to each great-niece and great-nephew shall be paid to the child's parent (my niece or nephew) or to the child's guardian, if there be such, and disbursed by him or her for the benefit of the child, The object of this provision is to simplify the handling of income, which will be small. The share of my great-nieces and great-nephews William M. Marks, III, and Stanley Marks shall be paid to their mother, Mrs. Elva Quisenberry Marks, of Montgomery, Ala."

Item 6 of the will declares the trust shall continue in effect "for, and during the joint and several lives of": his surviving brothers and sisters, listed by name, his eleven nieces and nephews, listed by name, and the twelve great nieces and great nephews, then in being, listed by name, with the name of the parent of each of the great nieces and great nephews. It further provides that the trust shall continue in effect "for and during the joint and several lives of any other nieces or nephews or great nieces or great nephews born prior to, and alive at the time of my death, and until the death of the last survivor of my brothers and sister, and the last survivor of my nieces and nephews, and the last survivor of my great nieces and nephews (alive at my death), as just above referred to, and no longer."

The eleven nieces and nephews named in the will are now alive and are parties to this proceeding. Augusta Andrews is now Mrs. Young. Martha Johnson is now Mrs. Wing, and Jane Powers is now Mrs. Philbrick.

The twelve great nieces and great nephews named in testator's will, natural born children of testator's nieces and nephews, are living and parties to this proceeding. In addition to the twelve great nieces and great nephews named in the will, five children have been born to testator's nieces and nephews since his death. These five are: Julia A. Marks, Simmons H. Worth, Mary G. Andrews, John W. Andrews and Sara S. Andrews.

In addition to the twenty-eight natural born nieces and nephews, great nieces and great nephews of testator, whose right to participate in the distribution of the income of the trust estate is conceded by all parties, there are four adopted children, *i.e.*, S. Leigh Park, Bruce R. Park, Mabel Y. Andrews and A. B. Andrews, Jr., who assert their right to participate in the distribution of the income and corpus of the trust estate. S. Leigh Park and Bruce R. Park are adopted children of Julia A. Park, niece of testator. S. Leigh Park was adopted in May 1950. Bruce R. Park was adopted in April 1951. Mabel Y. Andrews and A. B. Andrews, Jr. are adopted children of A. B. Andrews, III, testator's nephew. Mabel was adopted in March 1957, and A. B. Andrews, Jr., in March 1960. All adoption proceedings were had in the Superior Court of Wake County. Each was regular and conclusive.

Because of claims made by or on behalf of the four adopted children that they, by virtue of their adoption and the provisions of c. 967, S.L. 1963 (now codified as G.S. 48-23), were beneficiaries of the trust estate and entitled to participate therein, plaintiff, as trustee, instituted this action to obtain a judicial determination of the rights of the parties and its duties as trustee.

The natural born nieces, nephews, great nieces and great nephews, who answered, asserted the adopted children were not, by the Act of 1963, beneficiaries of the trust for that: (1) The Act did not apply to the trust; and (2) if it were applicable, it is unconstitutional since it violates the provisions of Art. 1, § 17, of the Constitution of North Carolina, Art. 1, § 10(1), and § 1 of the Fourteenth Amendment of the Constitution of the United States.

Judge Carr concluded: "That within the meaning of G.S. 48-23(c), it does not plainly appear from the terms of the Will of Alexander B. Andrews that the words 'great nieces' and 'great nephews' were intended to exclude children adopted by the nieces and nephews of Alexander B. Andrews." He further concluded that the eleven nieces and nephews and twelve great nieces and great nephews, named in the will, took, on testator's death, a vested estate; this estate could only be opened to permit a natural born great niece or great nephew to benefit from the trust fund; the 1963 Act, purporting to include the four adopted children as beneficiaries of the fund, was void, because prohibited by the Constitution of North Carolina and the Constitution of the United States.

Defendant Manning, guardian *ad litem* for the four adopted children, excepted and appealed.

*Manning, Fulton & Skinner; Jack P. Gulley for defendant appellant, Howard E. Manning, Guardian ad Litem.*

*Joyner & Howison for plaintiff appellee.*

*Maupin, Taylor & Ellis for Armistead J. Maupin, Guardian ad Litem, and for F. M. Simmons Andrews Et Al, defendant appellees.*

RODMAN, J. The rights which a child acquires by adoption are those and only those declared by legislative act. The adoption statute in effect when Mr. Andrews died may be found in G.S. (1943 edition) 48-23. If appellants had been adopted prior to Mr. Andrews' death, the statute then in effect would not have conferred on appellants the right to participate in the distribution of his estate; nor would they, by reason of the statute, have qualified as great nieces and great nephews of testator, *Grimes v. Grimes*, 207 N.C. 778, 178 S.E. 573; *Barton v. Campbell*, 245 N.C. 395, 95 S.E. 2d 914; nor would they, by any of the adoption laws enacted prior to 1963, have qualified, as heirs or distributees of Mr. Andrews, nor as his great nieces and great nephews, entitled to take under his will. *Thomas v. Thomas*, 258 N.C. 590, 129 S.E. 2d 239; *Allen v. Allen*, 260 N.C. 431, 132 S.E. 2d 909.

The 1963 Legislature, by c. 967, S.L. 1963, rewrote G.S. 48-23. That Act, ratified June 18, 1963, by express provision, became effective from and after its ratification. The provisions of the 1963 Act, pertinent to

the decision of this case, are the concluding sentence of subsection (a), and subsection (c). The last sentence of subsection (a) reads: "An adopted child shall have the same legal status, including all legal rights and obligations of any kind whatsoever, as he would have had if he were born the legitimate child of the adoptive parent or parents at the date of the signing of the final order of adoption, except that the age of the child shall be computed from the date of his actual birth." Unless subsection (c) requires a different rule, this change would operate prospectively and would have no application to vested estates. *Bennett v. Cain,* 248 N.C. 428, 103 S.E. 2d 510.

Subsection (c) provides: "From and after the entry of the final order of adoption, the words 'child', 'grandchild', 'issue', 'descendant', or an equivalent of the plural forms thereof, or any other word of like import in any deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the final order of adoption and whether such instrument was executed before or after the enactment of this Act."

Sec. 17, Art. I, of the Constitution of North Carolina, and Sec. 1 of the Fourteenth Amendment to the Constitution of the United States, forbid the Legislature from diminishing a vested interest by artificially increasing the class in which the estate has vested. Here, the trust estate vested in the brothers, the sister, the nieces and nephews, eleven in number, and the great nieces and great nephews, twelve in number, living on October 21, 1946, the day testator died, G.S. 31-41. *Parker v. Parker,* 252 N.C. 399, 113 S.E. 2d 899; *Hummell v. Hummell,* 241 N.C. 254, 85 S.E. 2d 144. If G.S. 48-23, as amended in 1963, is construed to make a child adopted by a niece or nephew of Mr. Andrews, subsequent to 1946, his great niece or great nephew, and thereby entitled to participate in the trust he created, it unconstitutionally diminishes the estate given to the natural born children of nieces and nephews and is void. *Robinson v. Barfield,* 6 N.C. 391; *Hoke v. Henderson,* 15 N.C. 1; *O'Connor v. Harris,* 81 N.C. 279; *Booth v. Hairston,* 193 N.C. 278, 136 S.E. 879; *Bateman v. Sterrett,* 201 N.C. 59, 159 S.E. 2d 14.

Appellants do not contend the Legislature could enact a statute diminishing the share vested in a beneficiary by artificially increasing the number of beneficiaries. Their position is: Mr. Andrews had the legal right to make adopted great nieces and great nephews beneficiaries of his estate, just as he had the right to make natural born great nieces and great nephews beneficiaries of his estate; and if, when he wrote his will, he meant to include within the words "great niece" or "great nephew," one thereafter adopted by a niece or nephew, the person so adopted would participate equally with a child born naturally

to a niece or nephew. It is quite true that the words "great niece" and "great nephew" would, if Mr. Andrews so intended, when he wrote the will, have included all who became a great niece or a great nephew by adoption or by birth. *Bradford v. Johnson*, 237 N.C. 572, 75 S.E. 2d 632; *Barton v. Campbell, supra.*

Appellants interpret the 1963 Act not as divesting a vested estate, but as creating a presumption that the words "great niece" and "great nephew" were understood by testator, when he wrote his will, to include both natural born and adopted children, thereby imposing on the natural born great nieces and great nephews the burden of showing that the words "great niece" and "great nephew" did not include one adopted by a niece or nephew, but only one born to a niece or nephew.

This interpretation of the statute, they argue, would not do violence to either State or Federal Constitutions, since the statute, so interpreted, would merely create a rule of evidence to be used in ascertaining intent — a power which the Legislature may constitutionally exercise. *Spencer v. Motor Co.*, 236 N.C. 239, 72 S.E. 2d 598; *State v. Griffin*, 154 N.C. 611, 70 S.E. 292; *Prince v. Nugent*, 172 A. 2d 743. The power of the Legislature to create presumptions is not unlimited. The presumption, or inference to be drawn from a given set of facts must have some reasonable relation to the stated inference. *State v. Griffin, supra; Bailey v. Alabama*, 219 U.S. 219, 55 L. Ed. 191; *Tot v. United States*, 319 U.S. 463, 87 L. Ed. 1519; Anno. 162 A.L.R. 495-535. The power to create a presumption can not be made a device to short circuit constitutional prohibitions.

It is the duty of the Court when interpreting a will to give effect to a testator's intention. When that intent can be ascertained with assurance from the words used, there is no need for presumptions or extrinsic evidence. *Yount v. Yount*, 258 N.C. 236, 128 S.E. 2d 613; *Stellings v. Autry*, 257 N.C. 303, 126 S.E. 2d 140; *Morris v. Morris*, 246 N.C. 314, 98 S.E. 2d 298; *Trust Co. v. Wolfe*, 243 N.C. 469, 91 S.E. 2d 246; *Trust Co. v. Green*, 239 N.C. 612, 80 S.E. 2d 771.

In deciding this case, it is not necessary to fathom legislative intent. The Legislature made it abundantly clear that the Act did not apply to instruments in which it clearly appeared testator did not intend for an adopted child to stand on the same footing with a blood relative.

Judge Carr was of the opinion that Mr. Andrews' will did not clearly indicate testator's intent to exclude adopted children from the trust he created. We reach a different conclusion. The persons specifically named in the will as beneficiaries of the trust, twenty-six in number, were all natural born. They were blood relatives of testator. This number could be increased only if great nieces or great nephews were *born* within twenty-one years after testator's death. Birth is, by the express pro-

visions of subsection (i) of item 2, and subsection (b) of item 6, made a condition precedent to participate in the trust. Born to whom, one may inquire? The answer, of course, is to a niece or nephew of the testator. Birth is not synonymous with adoption.

Holding, as we do, that the 1963 Act, by its express. language, excludes from its provisions those trusts or estates where it clearly appears that the beneficiaries are to be the natural born, and not adopted children, it follows that the judgment must be, and is,

Affirmed.