WACHOVIA BANK AND TRUST COMPANY, N.A., AND L. D. LONG, TRUSTEES UNDER THE WILL OF KATE G. BITTING REYNOLDS, DECEASED, PLAINTIFFS v. HELEN FARISH CAMPBELL CHAMBLESS, ANNETTE THOMAS YOUNG, ANNETTE YOUNG BROWN, WILLIAM E. YOUNG, JR., DONNA MARIE YOUNG, HELEN CAMPBELL BLACKMUN, VIRGINIA CHOCOLAS, MARCIE CHOCOLAS, JEFF CHOCOLAS, JULIA G. PATTERSON, BOBBY PATTERSON, HARRY A. CAMPBELL, JR., TERESA CAMPBELL JOHNSON, JOEY LEE JOHNSON, BENJIE JOE CAMPBELL, JODY LYN CAMPBELL, JEFFERY EUGENE CAMPBELL, TAMMEY GAIL CAMPBELL, JAMES F. CAMPBELL, REESE GRAHAM CAMPBELL, ROBERT W. CAMPBELL, DERECK BLAKE CAMPBELL, JAMES EDWARD FARISH, WILLIAM WHITAKER FARISH, WACHOVIA BANK AND TRUST COMPANY, N.A., TRUSTEE UNDER LIVING TRUST AGREEMENT DATED MARCH 22, 1967, WITH JAMES EDWARD FARISH FOR THE BENEFIT OF LOUISE C. FARISH, LOUISE C. FARISH, WACHOVIA BANK AND TRUST COMPANY, N.A., AND L. D. LONG, TRUSTEES UNDER SECTION FIVE OF THE WILL OF KATE G. BITTING REYNOLDS, DECEASED, RUFUS L. EDMISTEN, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, WILLIAM Z. WOOD, JR., GUARDIAN AD LITEM FOR MARCIE CHOCOLAS, JEFF CHOCOLAS, JOEY LEE JOHNSON, BENJIE JOE CAMPBELL, JEFFERY EUGENE CAMPBELL, TAMMEY GAIL CAMPBELL AND ALL OTHER NATURAL ISSUE OF HELEN FARISH CAMPBELL CHAMBLESS, BORN OR UNBORN, KNOWN OR UNKNOWN. DEFENDANTS.

No. 7821SC1016

(Filed 4 December 1979)

1. **Adoption § 5; Constitutional Law § 26— foreign adoption decree—full faith and credit**

    Absent fraud in the procurement, where jurisdictional requirements were met, duly authenticated adoption decrees from Missouri were entitled to recognition by the courts of N.C. under the full faith and credit clause of the U.S. Constitution.

2. **Descent and Distribution § 5— right of adopted child to inherit**

    G.S. 48-23 gives an adopted person the right to succeed to the estate of the adoptive parent upon intestacy and to take under the will of the adoptive parent if the parent so provides, and G.S. 48-23(3) applies to orders of adoption from other states as well as those under N.C. law.

3. **Wills § 48— adopted children as descendants**

    The term "descendant," as used in the will in question, included the adopted children of testatrix' nephew.

4. **Wills § 48— adopted children as descendants—express limitation required for exclusion**

    Absent an express limitation which specifically refers to the bloodline of the testator to the exclusion of adopted persons, the terms delineated in G.S. 48-23(3) will be deemed to include any adopted person; therefore, the adopted children of testatrix' nephew were included with those normally taking as

"descendants" under the will, since there was no expression of an intent to exclude adopted children within the terms of the will.

5. **Wills § 48— adopted children—adoption laws changed after will made**

There was no merit to appellants' contention that adopted children of testatrix' nephew should be excluded from taking under the will because, under the laws of adoption as they existed at the time of the drafting of the will in question, the adopted children would not have been allowed to take and that application of G.S. 48-23(3) would contradict the supposed knowledge and intent of the testatrix.

6. **Wills §§ 35.2, 48— interests given to "descendants"—contingent interest— adopted children as descendants**

Application of G.S. 48-23(3) to the terms of the will in the case did not unconstitutionally and artificially enlarge the class of beneficiaries entitled to take under the will, since the interests given to the "descendants" by the will were conditioned upon their surviving the income beneficiary under whom they were to take; this condition of survivorship made the remainder contingent; and the interests created by the will were therefore not unconstitutionally divested by inclusion of the adopted children.

APPEAL by defendants from *Lupton, Judge*. Judgment entered 18 September 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals 22 August 1979.

Plaintiffs seek declaratory judgment and instructions as to the proper construction of paragraph eight, section one of the Will of Kate G. Bitting Reynolds, deceased. Kate G. Bitting Reynolds died a resident of Forsyth County, North Carolina, on 23 September 1946, leaving a will dated 26 July 1934, which was duly admitted to probate by the Clerk of Superior Court of Forsyth County. In paragraph eight of section one of her will, Mrs. Reynolds made the following specific bequest in trust:

"8. To my trustees Two Hundred and Twenty-Five Thousand Dollars ($225,000.) in trust to pay the net income therefrom in equal shares to Helen Farish Campbell, Katherine Farish and James T. Farish, children of my sister Lilly Bitting Farish, and/or the survivors and/or survivor of them, provided however that upon the death of any one of them leaving descendants surviving them such part of the principal from which such deceased was receiving the income shall be at that time distributed among such descendants per stirpes. Upon the death of the last survivor without leaving descendants the estate in the hands of the trustees shall be divided

per stirpes among the then living descendants of my said nieces and nephew named in this Paragraph Eight of Section One or if there be none, then the same shall fall into and become part of the residue of my estate."

The three income beneficiaries under paragraph eight, section one, of Mrs. Reynolds' will were Helen Farish Campbell (now Helen Farish Campbell Chambless), Katherine Farish, and James T. Farish. Upon the death of Mrs. Reynolds in 1946, the income beneficiaries shared equally in the net income of the trust. Katherine Farish died without issue in 1964, whereupon the two remaining income beneficiaries, Helen Farish Campbell Chambless and James T. Farish, shared equally the net income from the trust. James T. Farish died on 24 September 1977 without natural issue, but was survived by two sons adopted in Missouri, James Edward Farish and William Whitaker Farish. The adoptions were ordered by the Circuit Court of Jackson County, Missouri, Kansas City, Missouri, in Proceedings Nos. A10935 and A11747, which Decrees of Adoption are filed in the Office of the Court Administrator.

On 22 March 1967, James E. Farish, pursuant to a Living Trust Agreement naming Wachovia Bank and Trust Company as Trustee (succeeded by Wachovia Bank and Trust Company, N.A.), established an irrevocable living trust, the principal asset of which is described as follows:

"Assignment by Grantor of one-third (33⅓%) of his interest in that portion of the testamentary trust under Section 1, paragraph 8 of the will of Kate B. Reynolds presently held by Wachovia Bank and Trust Company as Trustee thereunder, for the benefit of James T. Farish, and designated on the Trustee's Records as Account No. 5253."

Under the terms of the trust in Mrs. Reynolds' will, upon the death of one of the income beneficiaries "leaving descendants surviving them", the trustee is directed to pay "such part of the principal from which such deceased was receiving the income", for distribution among "such descendants per stirpes" of the deceased income beneficiary.

Upon the death of James T. Farish, the trustees sought a declaratory judgment as to whether James Edward Farish and

William Whitaker Farish, the children adopted by James T. Farish under the adoption laws of Missouri, are "descendants" within the meaning of paragraph eight, section one of the will of Kate G. Bitting Reynolds. A guardian ad litem was appointed for all minor descendants of Helen Farish Campbell Chambless and for all unborn or unknown natural descendants of Helen Farish Campbell Chambless.

A hearing was held before the court without a jury in August of 1978, and judgment was entered 18 September 1978. In finding that under G.S. 48-23(3), the adopted children of James T. Farish are "descendants" within the meaning of paragraph eight, section one of the will of Kate G. Bitting Reynolds, the court stated:

> "The adopted children of James T. Farish are 'descendants' of James T. Farish within the meaning of the Section ONE 8. trust created under the will of Kate G. Bitting Reynolds, Deceased. From and after the entry of any final order of adoption entered in this state, or in any other state within these United States, whereby a child is adopted by any natural or adopted child or descendant of Helen Farish Campbell (Chambless), or of James T. Farish, such adopted person shall be deemed a descendant of such income beneficiary within the meaning of the SECTION ONE 8. trust created by Kate G. Bitting Reynolds under her will."

Accordingly, one half of the principal of the trust was retained with the net income therefrom to be paid to Helen Farish Campbell Chambless, with the other half of the principal of the trust to be paid to James Edward Farish and William W. Farish in equal shares. The share paid to James Edward Farish was, of course, subject to the Living Trust Agreement dated 22 March 1967. The trust income accrued after 24 September 1977 was similarly distributed.

From entry of judgment declaring the sons of James T. Farish, adopted pursuant to Missouri law, "descendants" under the will of Kate G. Bitting Reynolds, defendants appeal.

*Womble, Carlyle, Sandridge & Rice, by W. P. Sandridge, Jr. and Francis C. Clark, for plaintiff appellees.*

*Harper and Wood, by J. Clifton Harper and William Z. Wood, Jr., for Campbell (Chambless) Heirs defendant appellants.*

*Biggs, Meadows, Batts, Etheridge and Winberry, by Frank P. Meadows, Jr., for James Edward Farish, William Whitaker Farish and Louise C. Farish defendant appellees.*

MORRIS, Chief Judge.

[1]   This action concerns the effect of an extrastate adoption on the law of testamentary disposition in North Carolina. We must first determine whether the Missouri adoption orders are entitled to full faith and credit in North Carolina.

Copies of the decrees, duly authenticated pursuant to Title 28, U.S.C. § 1738 (N.C. Gen. Stat., Appendix IV, Replacement Vol. 1970), were introduced into evidence. The trial court held that "[t]he adoptions of James Edward Farish in 1940 and William Whitaker Farish in 1941 were duly ordered by the Court having jurisdiction over the subject matter and the parties in the State of Missouri and such orders are entitled to full faith and credit by this state." We hold that the court correctly held that the duly authenticated adoption decrees from Missouri are entitled to recognition by the courts of North Carolina under the full faith and credit clause of the United States Constitution.

Adoption was unknown at common law, having evolved purely as a creature of statute. *See, e.g., Wilson v. Anderson,* 232 N.C. 212, 59 S.E. 2d 836 (1950). *See generally* Fairley, *Inheritance Rights Consequent to Adoptions,* 29 N.C.L. Rev. 227 (1951). As such, adoption is effected by court proceedings, which usually culminate in a court decree establishing the status of adoption. *See, e.g.,* G.S. 48-12 to 48-22 (Replacement Vol. 1976). The decree of adoption obtained by judicial proceedings is regarded as a judgment of the court, and is given the force and effect of any other judgment. *Wilson v. Anderson, supra.* Where a problem of recognition of adoption decrees by other jurisdictions exists, it is a conflict of laws problem. In conflict of laws terms, the adopting state has an interest in the validity of its court decree beyond its mere boundaries, whereas other states have a competing interest

in regulating the substance and procedure of adoptions which affect their states. Nevertheless, "[a]s a general rule, the status of adoption created under the law of a state . . . by a court having jurisdiction to create it will be recognized and given effect in another state unless the foreign adoption is inconsistent with, or repugnant to, the laws or policy of the other state. . . ." 2 C.J.S., *Adoption of Persons* § 144 (1972); 15A C.J.S., *Conflict of Laws* § 14(6) (1967). *See generally* Wurfel, *Recognition of Foreign Judgments*, 50 N.C.L. Rev. 21 (1971). This general recognition comes under either principles of comity or the full faith and credit requirement of the Federal Constitution, according to the view of the particular court and the circumstances of the case. *See* Annot., 87 A.L.R. 2d 1240 (1963); 2 Am. Jur. 2d, *Adoption* § 116 (1962).

In *In re Osbourne*, 205 N.C. 716, 172 S.E. 491 (1934), the North Carolina Supreme Court ruled that the status of adoption established in another state will be given full faith and credit in North Carolina. In that case, a Virginia adoption judgment was found to be properly entered and based on competent jurisdiction. The Court therefore concluded: "The child was adopted according to the law of Virginia and we must give under the U.S. Constitution, Article IV, section 1, 'full faith and credit'." 205 N.C. at 719, 172 S.E. at 492. For a discussion with respect to granting full faith and credit to foreign judgments, *see Thomas v. Frosty Morn Meats, Inc.*, 266 N.C. 523, 146 S.E. 2d 397 (1966).

The granting of full faith and credit may be defeated by showing want of jurisdiction either as to the subject matter or as to the person of defendant, or by showing fraud in its procurement. *Thomas v. Frosty Morn Meats, Inc., supra; In re Blalock*, 233 N.C. 493, 64 S.E. 2d 848 (1951); *Courtney v. Courtney*, 40 N.C. App. 291, 253 S.E. 2d 2 (1979). However, in the absence of such proof, the judgment will be presumed valid. *Dansby v. Insurance Co.*, 209 N.C. 127, 183 S.E. 521 (1936). Defendants have not presented any evidence to indicate that the Missouri court lacked the requisite jurisdiction or that the adoptions were procured by fraud as was the case in *Blalock, supra,* upon which appellants rely. On the contrary, we find that the Missouri jurisdictional requirements were met, and that the adoption decrees were properly entered in accordance with Missouri law. We find no support for defendants' contention that the Missouri decrees must meet

the requirements of G.S. 48-22, and this contention is rejected. We, therefore, conclude that the adoptions of James Edward Farish and William Whitaker Farish are entitled to full faith and credit, and thus given full force and effect in North Carolina.

[2] We next consider the effect of such status on the law regarding inheritance by adopted persons. In North Carolina the legal effects of a final order of adoption are enumerated in G.S. 48-23, which provides as follows:

"§ 48-23. *Legal effect of final order.* — The following legal effects shall result from the entry of every final order of adoption:

(1) The final order forthwith shall establish the relationship of parent and child between the petitioners and child, and from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property by, through, and from the adoptive parents in accordance with the statutes relating to intestate succession. An adopted child shall have the same legal status, including all legal rights and obligations of any kind whatsoever, as he would have had if he were born the legitimate child of the adoptive parent or parents at the date of the signing of the final order of adoption, except that the age of the child shall be computed from the date of his actual birth.

.   .   .

(3) From and after the entry of the final order of adoption, the words 'child,' 'grandchild,' 'heir,' 'issue,' 'descendant,' or an equivalent, or the plural forms thereof, or any other word of like import in any deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the final order of adoption and whether such instrument was executed before or after the enactment of this section."

Taken in conjunction with each other, these sections give an adopted person the right to succeed to the estate of the adoptive parent upon intestacy, and to take under the will of the adoptive

parent if the parent so provides. This result comes from a recognition of the absolute necessity, given the prevalence of adoptions in modern society, that adoption effect a complete substitution of families.

Clearly, if the children of James T. Farish had been adopted under the provisions of Chapter 48, they would take under the will of Kate G. Bitting Reynolds. *See Peele v. Finch*, 284 N.C. 375, 200 S.E. 2d 635 (1973); *Simpson v. Simpson*, 29 N.C. App. 14, 222 S.E. 2d 747 (1976); *Stoney v. MacDougall*, 28 N.C. App. 178, 220 S.E. 2d 368 (1975), *cert. denied*, 289 N.C. 302, 222 S.E. 2d 702 (1976). Defendants argue that, since the Farish adoptions were out-of-state and did not comply with G.S. 48-22, they do not fall under the provisions of G.S. 48-23(3), inasmuch as the latter statute applies only to North Carolina adoptions. We reject this argument and hold that section 48-23(3) applies to the orders of adoption from Missouri, as well as those under North Carolina law.

[3]   We think practicality and common sense require that a forum state should not treat a child adopted in another state differently from one adopted locally when the incidents of the relationship are substantially the same in both states. *Goodrich, Conflicts of Law* § 147 (1964). Once recognized, the status acquired by a valid decree in one state will be given the same effect by the courts of another state in determining rights of inheritance as would be given if the status of adoption had been created by a valid decree of a court in the latter state. *See generally* Annot., 73 A.L.R. 964 (1931); 2 Am. Jur. 2d Adoptions § 114 (1962). *Restatement (Second) of Conflicts of Law*, § 290 (1971), provides:

> "An adoption rendered in a state having judicial jurisdiction . . . will usually be given the same effect in another state as is given by the other state to a decree of adoption rendered by its own courts."

It follows that the Missouri adoptions should be given effect as if they were entered pursuant to the requirements of Chapter 48. The language "final order of adoption" in G.S. 48-23, therefore, applies to the Farish adoptions. We thus agree with the trial court that although G.S. 48-23(3) was enacted as a part of the general adoption law of this State, the provisions of the statute are applicable not only to children adopted pursuant to orders entered

by the courts of this State, but are also applicable to children properly adopted under the laws of other states. The practicality of this result is obvious when we recognize that we live in a highly mobile society, that adoptions are being increasingly utilized for the creation of a family unit, and that adoptive parents and adopted children, in planning the disposition of their estate, are entitled to rely on the expectation of uniform treatment. Applying G.S. 48-23(3), we hold that the term "descendant", as used in the will of Kate G. Bitting Reynolds, includes the adopted children of James T. Farish.

Appellants argue that even if the adopted children of James T. Farish are deemed "descendants" under paragraph eight, section one of Mrs. Reynolds' will, those children do not share under the will because a contrary intent appears by the terms of the will. A "cardinal principle in the construction of a will is to give effect to the intent of the testator as it appears from the language used in the instrument itself, subject to the limits imposed by statute or decision." *Stoney v. MacDougall*, 31 N.C. App. 678, 681, 230 S.E. 2d 592, 593 (1976), *cert. denied*, 291 N.C. 716, 232 S.E. 2d 208 (1977). Section 48-23(3) provides that "descendant" includes any adopted person, "unless the contrary plainly appears by the terms thereof." In this regard, section 48-23(3) provides a "clear and certain rule of construction to be applied unless a contrary intent plainly appears from the terms of the instrument." *Stoney v. MacDougall*, supra, 31 N.C. at 681, 230 S.E. 2d at 594. In *Trust Co. v. Andrews*, 264 N.C. 531, 142 S.E. 2d 182 (1965), the Court dealt with this exclusionary language. The *Andrews* Court stated that "[t]he Legislature made it abundantly clear that the Act did not apply to instruments in which it clearly appeared testator did not intend for an adopted child to stand on the same footing with a blood relative." 264 N.C. at 537, 142 S.E. 2d at 187. The Court held that since the number of beneficiaries of the trust in question could be increased only if those children were *born* within a prescribed period after testator's death, section 48-23(3) was ineffective to include adopted persons under the terms of the trust. In the Court's words, "[b]irth is not synonymous with adoption." 264 N.C. at 538, 142 S.E. 2d at 187.

[4] However, the Court reached a different result in *Peele v. Finch*, 284 N.C. 375, 200 S.E. 2d 635 (1973). In that case, the Court faced the question of whether an adopted child whose adoption oc-

curred after the death of the testator, was "issue" of her adoptive parent within the meaning of the will in question. The Court found that by G.S. 48-23(3), the adopted child would take under a limitation to a "child", in that no contrary intent plainly appeared in the terms of the will or conveyance. The Court concluded as follows:

> "Nothing in the devise made by the will . . . throws any light whatever upon his intent with reference to this matter. Therefore, we are required by the statute to hold that the adopted child . . . is 'issue' . . . within the meaning of this will and takes thereunder. . . ." 284 N.C. at 383, 200 S.E. 2d at 641.

It is apparent, then, that absent an express limitation, such as in *Andrews*, which specifically refers to the bloodline of the testator to the exclusion of adopted persons, the terms delineated in G.S. 48-23(3) will be deemed to include any adopted person. *See Peele v. Finch, supra; Stoney v. MacDougall, supra; Simpson v. Simpson, supra.*

In the present case, we find no evidence that the testatrix intended to exclude adopted children from those normally taking as "descendants" under paragraph eight, section one of her will. Appellants insist that the will of Mrs. Reynolds places a great emphasis on the family bloodline, and, therefore, her intent was to exclude all adopted children from sharing in her estate. Although that intention may have existed in Mrs. Reynolds' mind at the time she made her will, we are unable to locate any expression of such an intent within the terms of the will of Kate G. Bitting Reynolds. Therefore, we are required under section 48-23(3) to include the adopted sons of James T. Farish in the class of "descendants" entitled to take upon the death of James T. Farish.

[5] In addition, appellants argue that, under the laws of adoption as they existed at the time of the drafting of Mrs. Reynolds' will, the adopted sons would not have been allowed to take, and, therefore, application of G.S. 48-23(3) would contradict the supposed knowledge of the testatrix as to the statute's limitations and her subsequent intent to that effect. This issue was recently raised in *Stoney v. MacDougall, supra,* wherein this Court concluded:

"Appellant . . . argues that at the time the will was drafted
and at testator's death, the word issue did not include
adopted children, and therefore merely by its use at that
time an intent contrary to the provisions of G.S. 48-23(3)
plainly appears. . . . Were this argument to be adopted it
would vitiate the effect of G.S. 48-23(3) on all instruments
drafted before its enactment, contrary to the clearly ex-
pressed intent of the legislature." 31 N.C. App. at 681, 230
S.E. 2d at 593.

This contention is also rejected here.

[6] Finally, appellant argues that application of G.S. 48-23(3) to
the terms of the will in this case unconstitutionally and artificially
enlarges the class of beneficiaries entitled to take under the will.
In this regard, we find the Court's interpretation of G.S. 48-23(3)
in *Peele v. Finch, supra,* applicable:

"We find no provision in either the State Constitution or the
Federal Constitution which takes from the Legislature the
power to do what the Legislature clearly undertook to do in
the enactment of G.S. 48-23(3). At the time of the enactment
of this statute, no brother or sister of Laura Brown Finch
and no issue of a deceased brother or sister had any vested
interest in the property in question, their rights at that time
being contingent, as above noted. Retrospective statutes
destroying or diminishing contingent interests in property do
not, per se, deprive the holder thereof of property without
due process of law, in violation of the Fourteenth Amend-
ment to the Constitution of the United States or Article I,
§ 19, of the Constitution of North Carolina, or violate any
other constitutional limitation upon legislative power." 284
N.C. at 382, 200 S.E. 2d at 640.

In the case at bar, the interests given to the "descendants"
by paragraph eight, section one of Mrs. Reynolds' will, were con-
ditioned upon their surviving the income beneficiary under whom
they were to take. This condition of survivorship made the re-
mainder contingent, in that the "descendants" entitled to take
could not be determined until the death of James T. Farish, the
income beneficiary. "Where words of futurity are used or implied
in making the gifts, or where the gift is dependent upon a future
event, the gift is usually determined to be contingent." *G. Bogert,*

*The Law of Trusts and Trustees* § 182, pp. 413-14 (Rev. 2d Ed. 1979). In North Carolina, the general rule as to this question is as follows:

> "When under the language of the instrument there is uncertainty as to the person or persons who are to take, and the uncertainty is to be resolved in a particular way or according to conditions at a particular time in the future, the estate is contingent." 13 Strong's N.C. Index 3d, Wills § 35.2 (1978).

*See White v. Alexander*, 290 N.C. 75, 224 S.E. 2d 617 (1976); *Wachovia Bank and Trust Co. v. Schneider*, 235 N.C. 446, 70 S.E. 2d 578 (1952); *Wachovia Bank and Trust Co. v. Waddell*, 234 N.C. 34, 65 S.E. 2d 317 (1951); *First Security Trust Co. v. Henderson*, 225 N.C. 567, 35 S.E. 2d 694 (1945). *Cf. Purifoy v. Mercantile-Safe Deposit and Trust Co.*, 567 F. 2d 268 (4th Cir. 1977). (Statute creating presumption that terms "child", "heir", "issue", and "descendant" included adopted persons held not an unconstitutional retroactive divestiture of interests in view of fact that, under Maryland law, those interests did not absolutely vest until the death of life tenant.) Thus, the survivorship condition in Mrs. Reynolds' will gave the "descendants" of the income beneficiaries only a contingent interest.

The interests created by paragraph eight, section one of Mrs. Reynolds' will in favor of the "descendants" should they survive the income beneficiaries were not, under *Peele v. Finch*, unconstitutionally divested. Thus, we hold that G.S. 48-23(3) controls, and we reject defendants' argument in this respect.

Since we conclude that the trial court made no error in the application of G.S. 48-23(3) or in the administration of paragraph eight, section one of the will of Kate G. Bitting Reynolds, the judgment below is hereby

Affirmed.

Judges PARKER and MARTIN (Harry C.) concur.