763 N.W.2d 404 (2009)
277 Neb. 546
In re Trust Created by John A. NIXON, deceased.
John A. Nixon Family Trust et al., appellees,
v.
Robert Nixon et al., appellants.
No. S-07-1353.
Supreme Court of Nebraska.
April 10, 2009.
*406 John G. Liakos, Michael J. Matukewicz, and Jason R. Fendrick, of Liakos & Matukewicz, L.L.P., Omaha, for appellants.
David L. Buelt and Carlos E. Noel, of Ellick, Jones, Buelt, Blazek & Longo, Omaha, for appellee Wells Fargo Bank, N.A.
Heather Voegele-Andersen and Mary A. Donovan, of Koley Jessen, P.C., L.L.O., Omaha, for appellee Richard Daley.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
The main issue in this appeal is whether an adult adoption, which was valid at the time it was granted in California but would not have been allowed under Nebraska law, is entitled to full faith and credit in determining the beneficiaries of a trust in Nebraska. In this trust administration action, Wells Fargo Bank, N.A. (Wells Fargo), as trustee, sought a determination of the proper beneficiaries of a trust. We affirm the order of the county court for Douglas County finding that the California adoption decree was entitled to full faith and credit in Nebraska.

STATEMENT OF FACTS
John A. Nixon, Sr. (John Sr.), died in 1965, and his will created a family trust to provide for the maintenance and support of his wife until her death. Upon her death in 1980, under the terms of John *407 Sr.'s will, the trust was divided into two trusts, "Trust A" and "Trust B." The beneficiary of Trust A was John Sr.'s daughter Grace Nixon, who at the time John Sr. executed the will in 1964 was 43 years old, unmarried, and childless. The trust documents provided that upon Grace's death, Trust A was to be divided into as many equal shares as there were living children of Grace and deceased children of Grace who left issue surviving. If Grace died without living children or without issue of deceased children, the assets of Trust A were to be held or distributed as directed by the terms of Trust B. The beneficiaries of Trust B were John Sr.'s son John A. Nixon, Jr. (John Jr.), his wife, and their children. John Jr. and his wife had children living at the time John Sr. executed the will in 1964. Upon the deaths of John Jr. and his wife, Trust B was to be divided among the living children and issue of deceased children of John Jr.
It appears from the record that Grace did not get along with John Jr. and his wife and children. In 1985, Grace approached her maternal cousin, Richard Daley. Grace told Daley that he could become the beneficiary of Trust A if he agreed to be adopted by her. Daley was approximately 50 years old, and Grace, who was still unmarried and childless, was approximately 64 years old. Daley testified at trial in this matter that one of Grace's purposes for the adoption was to prevent John Jr.'s children from receiving the principal of Trust A upon her death.
Grace filed a petition in California seeking to adopt Daley. The Superior Court of Los Angeles County, California, issued a decree of adoption in 1986. Grace told Daley to keep the adoption secret, and Grace and Daley never resided together after the adoption. Daley's biological father had died, but Daley's biological mother was still alive in 1986. She did not relinquish her parental rights, and her parental rights were not terminated prior to Grace's adoption of Daley. Daley did not tell his biological mother about the adoption, and they continued their usual parent-child relationship.
After the adoption, Grace informed Wells Fargo that by adopting Daley, she intended him to be her legal heir by adoption and to become the beneficiary of Trust A upon her death. Grace died on November 13, 2006. Daley survived, and Grace left no spouse or biological children. Wells Fargo filed the present trust administration action in the county court for Douglas County seeking a determination of the beneficiaries of Trust A.
Robert Nixon, Kenneth Nixon, Joanne Nixon Rickels, and Dianne Nixon Sullo (the Nixons) are the children of John Jr. John Jr. and his wife were apparently deceased, and therefore, if it were determined that Grace died without children, the Nixons, as beneficiaries of Trust B, would also become the beneficiaries of Trust A. The issue in the trust administration action was whether Daley was a living child of Grace and therefore the beneficiary of Trust A or whether Grace died without children, leaving the Nixons as the beneficiaries.
The county court determined that Daley was the sole beneficiary of Trust A. The court reasoned that Grace's adoption of Daley in California was a lawful adoption pursuant to California law at the time the adoption decree was entered and that full faith and credit should be given to the adoption decree. The court noted that Nixon's will defined "issue" to include "`persons legally adopted'" and that the will did not specify that the term "children" was to exclude adopted children. The court cited Satterfield v. Bonyhady, 233 Neb. 513, 446 N.W.2d 214 (1989), in *408 which this court held that in the absence of specific testamentary directions to the contrary, adopted children inherit to the same extent as do natural children. Because the court determined that Daley was Grace's child, it concluded that Daley became the sole beneficiary of Trust A upon Grace's death, and the court ordered Wells Fargo to distribute the assets of Trust A to Daley.
The Nixons appeal the decision of the county court.

ASSIGNMENTS OF ERROR
The Nixons assert that the county court erred in concluding that the State of Nebraska was required to give full faith and credit to the California adoption of Daley. The Nixons also assert that, based on such finding, the county court further erred in finding that Daley was Grace's child and the sole beneficiary of Trust A and in ordering Wells Fargo to deliver the assets of Trust A to Daley.

STANDARDS OF REVIEW
The issue presented in this case is whether the adoption decree entered by the California court is entitled to full faith and credit in Nebraska. This is a question of law. See Susan H. v. Keith L., 259 Neb. 322, 609 N.W.2d 659 (2000) (regarding whether paternity decree entered by Oklahoma court entitled to full faith and credit). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. State v. Parker, 276 Neb. 661, 757 N.W.2d 7 (2008).

ANALYSIS
The Nixons' arguments focus on the county court's conclusion that it was required to give full faith and credit to the California adoption of Daley. They argue that the adoption was contrary to the public policy of Nebraska and that therefore, it was not entitled to full faith and credit in Nebraska. They also argue that because the court erred in giving full faith and credit to the California adoption, the court further erred by finding that Daley was Grace's child and the sole beneficiary of Trust A and in therefore ordering Wells Fargo to deliver the assets of Trust A to Daley. We conclude that there is no expressed public policy that overcomes the constitutional requirement for Nebraska to give full and faith credit to the judgment of the California court and that therefore, the county court did not err when it determined that Daley was to be considered Grace's child and the sole beneficiary of Trust A and when it ordered Wells Fargo to deliver the assets of Trust A to Daley.
The Full Faith and Credit Clause of U.S. Const. art. IV, § 1, provides in part that "Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State." We have recognized that adoption decrees are among the judgments to which full faith and credit is due. See Russell v. Bridgens, 264 Neb. 217, 647 N.W.2d 56 (2002). In Russell v. Bridgens, a case involving a Pennsylvania adoption decree, we stated that a judgment rendered in a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment. Other jurisdictions have similarly recognized adoption decrees as being judgments entitled to full faith and credit. See, Finstuen v. Crutcher, 496 F.3d 1139 (10th Cir.2007); Byrum v. Hebert, 425 So.2d 322 (La.App.1982); Wachovia Bank and Trust Co. v. Chambless, 44 N.C.App. 95, 260 S.E.2d 688 (1979); Delaney v. First National Bank in Albuquerque, 73 N.M. 192, 386 P.2d 711 (1963).
*409 While we recognized in Russell v. Bridgens, supra, that the Full Faith and Credit Clause of the U.S. Constitution prohibits a Nebraska court from reviewing the merits of a judgment rendered in a sister state, we noted that a foreign judgment can be collaterally attacked by evidence that the rendering court was without jurisdiction over the parties or the subject matter. However, the Nixons make no argument in this case that the California court was without jurisdiction over the parties or the subject matter when it issued the adoption decree. Instead, the Nixons argue that the California adoption decree should not be given full faith and credit in Nebraska, because, they assert, the adoption violates Nebraska public policy.
The Nixons argue that the California adoption decree violates Nebraska public policy because the adoption would not have been allowed under Nebraska statutes. They note that Grace could not have adopted Daley in Nebraska, because Nebraska statutes do not, and at the time of the adoption did not, allow the adoption of an adult except under specific circumstances that were not present in this case. The Nixons argue that because the adoption would not have been allowed under Nebraska statutes, the California adoption decree violates Nebraska public policy and should not be given full faith and credit by Nebraska courts.
We note, however, that the U.S. Supreme Court has said that its "decisions support no roving `public policy exception' to the full faith and credit due judgments." Baker v. General Motors Corp., 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (emphasis in original). In this regard, the Court has differentiated between the application of the Full Faith and Credit Clause as it relates to statutes and as it relates to judgments. The Court has noted that although the Full Faith and Credit Clause does not compel a state to substitute the statutes of another state for its own statutes, with regard to "judgments, however, the full faith and credit obligation is exacting." Id. Similarly, in Miller v. Kingsley, 194 Neb. 123, 125, 127, 230 N.W.2d 472, 474, 475 (1975), this court stated that a "forum state need not give application to the statute of another state where the statute is in conflict with the laws or policy of the forum," but that a "state may not refuse to enforce a judgment of a foreign state on the ground that it would result in a violation of the public policy of the forum state." (Emphasis in original.) Therefore, while a Nebraska court would not be required to grant an adoption pursuant to California statutes when such adoption would not be permitted under Nebraska statutes, a Nebraska court may not refuse to recognize the judgment consisting of an adoption decree validly entered by a California court.
The Nixons cite Hood v. McGehee, 237 U.S. 611, 35 S.Ct. 718, 59 L.Ed. 1144 (1915), for the proposition that the Full Faith and Credit Clause is not violated when a state excludes children adopted in other states from inheriting property. However, Hood v. McGehee does not control the present case. Hood v. McGehee involved an Alabama statute which prohibited inheritance by children adopted through proceedings in other states. The U.S. Supreme Court held that the statute did not violate the Full Faith and Credit Clause, because the statute did not fail to give full credit to or "deny the effective operation of the [other state adoption] proceedings." 237 U.S. at 615, 35 S.Ct. 718. Instead, the Alabama statute recognized out-of-state adoptions but, notwithstanding recognition of the adoption, specified that persons adopted in such proceedings were not entitled to the same rights of inheritance *410 as other children with respect to property in Alabama. Therefore, while a state must give full faith and credit to an adoption decree from another state, Hood v. McGehee stands for the proposition that a state may by statute determine the inheritance rights of an individual adopted in another state to property in the forum state.
Unlike the facts at issue in Hood v. McGehee, Nebraska has no statute prohibiting persons adopted in other states from inheriting property. Instead, Nebraska probate statutes provide that "an adopted person is the child of an adopting parent," see Neb.Rev.Stat. § 30-2309 (Reissue 2008), and such statutes make no distinction based upon where the adoption proceedings took place. Our case law further indicates that the expressed public policy under Nebraska law is that adopted children are entitled to the same rights of inheritance as biological children. See, Satterfield v. Bonyhady, 233 Neb. 513, 446 N.W.2d 214 (1989); In re Trust Estate of Darling, 219 Neb. 705, 365 N.W.2d 821 (1985); Neil v. Masterson, 187 Neb. 364, 191 N.W.2d 448 (1971); In re Estate of Taylor, 136 Neb. 227, 285 N.W. 538 (1939).
The Nixons urge this court to hold as a matter of public policy that an adoption is not valid for purposes of descent if such adoption is a subterfuge done for the purpose of making the adoptee a beneficiary under an existing testamentary instrument. The Nixons cite to cases from other states endorsing such a policy. See Cross v. Cross, 177 Ill.App.3d 588, 532 N.E.2d 486, 126 Ill.Dec. 801 (1988), and cases cited therein. The matter of adoption is statutory, In re Adoption of Kailynn D., 273 Neb. 849, 733 N.W.2d 856 (2007), and as we recently observed, it is the Legislature's function through the enactment of statutes to declare what is the law and public policy. State ex rel. Wagner v. Gilbane Bldg. Co., 276 Neb. 686, 757 N.W.2d 194 (2008). The Nixons argue that the Legislature has expressed the policy it proposes, because Nebraska adoption statutes do not allow the adoption of adults except in certain specific situations not present here. However, we find no clear indication that the public policy behind the Nebraska adoption statutes is to prevent the use of adoption to create inheritance rights. As noted above, the recognized public policy in Nebraska is that adopted children are entitled to the same inheritance rights as biological children, and we find no indication that this policy is not meant to apply to those validly adopted under the laws of another state. We decline to adopt the holding urged by the Nixons which would deny effect to the California adoption at issue for inheritance purposes in the absence of a clear indication that public policy so requires.
Because we reject the Nixons' assertion that the California adoption decree violated Nebraska public policy and therefore should not be given full faith and credit, we conclude that the county court did not err in concluding that full faith and credit should be given to the California adoption decree. Because of such conclusion, we further conclude that the county court did not err in finding Daley was Grace's child. As the county court noted, Nixon's will defined "issue" to include "`persons legally adopted'" and the will did not specify that the term "children" was to exclude adopted children. Because the county court did not err in finding Daley to be Grace's child, it further did not err in finding Daley to be the sole beneficiary of Trust A and in therefore ordering Wells Fargo to deliver the assets of the trust to Daley.

CONCLUSION
We conclude that the county court did not err in concluding that the California *411 adoption decree was entitled to full faith and credit in Nebraska. We therefore further conclude that the county court did not err in finding Daley to be Grace's child and the sole beneficiary of Trust A and in therefore ordering Wells Fargo to deliver the assets of Trust A to Daley.
AFFIRMED.
HEAVICAN, C.J., participating on briefs.