Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/24/2016 09:09 AM CDT

In re Adoption of Jaelyn B., a minor child.
Jesse B., appellant, v. Tylee H., appellee.
___ N.W.2d ___

Filed June 24, 2016.    Nos. S-15-096, S-15-228.

1. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
2. **Statutes.** The meaning and interpretation of a statute present questions of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Jurisdiction: Appeal and Error.** Before deciding the merits of an appeal, an appellate court must determine if it has jurisdiction.
5. ____: ____. If the court from which a party appeals lacked jurisdiction, then the appellate court acquires no jurisdiction.
6. ____: ____. An appellate court has the power to determine whether it has jurisdiction over an appeal and to correct jurisdictional issues even if it does not have jurisdiction to reach the merits.
7. **Constitutional Law: Courts: Jurisdiction: Child Custody: Habeas Corpus: Adoption: Declaratory Judgments.** District courts have inherent equity jurisdiction to resolve custody disputes. And they have jurisdiction over habeas proceedings challenging adoption proceedings. Accordingly, district courts have jurisdiction over a related declaratory judgment action challenging the constitutionality of Nebraska adoption statutes.
8. **Foreign Judgments: Jurisdiction: States.** A judgment rendered in a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment.
9. **Constitutional Law: States: Statutes: Public Policy.** Nebraska is not constitutionally required to give effect to a sister state's statutes that are contrary to the public policy of this state.

10. **Paternity: Child Custody: Time.** In Nebraska, a paternity acknowledgment operates as a legal finding of paternity after the rescission period has expired. And a father whose paternity is established by a final, voluntary acknowledgment has the same right to seek custody as the child's biological mother, even if genetic testing shows he is not the biological father.

11. **Paternity.** Under Neb. Rev. Stat. § 43-1402 (Reissue 2008), establishment of paternity by acknowledgment is the equivalent of establishment of paternity by a judicial proceeding.

12. **Constitutional Law: Foreign Judgments: States.** The Full Faith and Credit Clause requires states to give the same effect to a judgment in the forum state that it has in the state where the court rendered the judgment.

13. **Constitutional Law: Foreign Judgments: States: Paternity.** Neb. Rev. Stat. § 43-1406(1) (Reissue 2008) extends the full faith and credit requirement for judgments to a sister state's paternity determination established through a voluntary acknowledgment.

14. **Foreign Judgments: States: Paternity: Adoption.** Whether a paternity acknowledgment in a sister state gives an acknowledged father the right to block an adoption in Nebraska depends upon whether the acknowledgment confers that right in the state where it was made.

15. **Interventions.** Under Neb. Rev. Stat. § 25-328 (Reissue 2008), to be entitled to intervene in an action, an intervenor must have a direct and legal interest. The intervenor must lose or gain by the direct operation and legal effect of the judgment that may be rendered in the action.

16. **Foreign Judgments: States: Paternity: Adoption: Parental Rights.** When the law of a sister state legally determines that an acknowledged father has the full rights of a natural father who can withhold consent to an adoption, that father is not a "man" within the meaning of Neb. Rev. Stat. § 43-104.22(11) (Reissue 2008).

17. **Judgments: Collateral Attack: Paternity.** The collateral attack rules that apply to a judgment also apply to a voluntary acknowledgment of paternity that has the same effect as a judgment.

18. **Constitutional Law: Appeal and Error.** An appellate court will generally not decide a constitutional issue that was not presented to the trial court.

Appeals from the County Court for Douglas County: Marcena M. Hendrix, Judge. Reversed and remanded with directions to vacate.

George T. Babcock, of Law Offices of Evelyn N. Babcock, and Jennifer Gaughan, of Legal Aid of Nebraska, for appellant.

Shawn D. Renner and Susan K. Sapp, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, and CASSEL, JJ., and PIRTLE and RIEDMANN, Judges.

CONNOLLY, J.

## I. SUMMARY

In these consolidated cases, and a companion case,[1] the appellant, Jesse B., challenged the adoption of his daughter, Jaelyn B. These consolidated appeals arise from the adoption proceeding in county court. Jesse attempted to intervene to challenge the court's authority to exercise jurisdiction over the adoption proceeding. Jesse is Jaelyn's legal father under Ohio statutes. Those statutes provide that he has a right to notice of a proceeding to adopt Jaelyn and that his consent is required. Jesse claimed that Nebraska must give full faith and credit to Ohio's determination of his paternity. He also claimed that the court lacked subject matter jurisdiction because he had not consented to Jaelyn's adoption.

Despite Ohio statutes that give Jesse paternity rights, the county court concluded that Nebraska's adoption statutes did not require Jesse's consent to Jaelyn's adoption because genetic testing showed that another man was Jaelyn's biological father. Accordingly, the county court did not allow Jesse to intervene. Later, it issued an adoption decree.

We conclude that Neb. Rev. Stat. 43-1406(1) (Reissue 2008) requires Nebraska to give full faith and credit to Ohio's paternity determination. Giving full faith and credit includes giving effect to Ohio's determination that Jesse must consent to Jaelyn's adoption. Because he did not consent, we conclude that the county court erred in disestablishing his paternity through an adoption decree. We reverse the judgment and remand the cause with directions for the county court to vacate its decree. We deal with the custody issues

---

[1] See *Jesse B. v. Tylee H., post* p. 973, ___ N.W.2d ___ (2016).

going forward in Jesse's separate habeas corpus appeal from the district court.

## II. BACKGROUND

Before setting out the facts and resolving some of the issues under Ohio's statutes, we set out the judicial notice principles that apply here. A court may judicially notice adjudicative facts, which are not subject to reasonable dispute, at any stage of the proceeding.[2] In interwoven and interdependent cases, we can examine our own records and take judicial notice of the proceedings.[3]

### 1. Jesse's Voluntary Acknowledgment of Paternity and Jaelyn's Birth Certificate

Jaelyn was born in Ohio in April 2013. The next day, the mother, Heather K., and Jesse signed before a notary an "Acknowledgment of Paternity Affidavit," affirming that Jesse was Jaelyn's father. The instructions provided that both the mother and the father had to sign the acknowledgment and have each signature notarized. The form explained that the purpose of the paternity affidavit "is to acknowledge the legal existence of a father and child relationship through voluntary paternity establishment." The signature certification required each parent to affirm that he or she had read both sides of the affidavit. On the back, the acknowledgment included a notice of the parties' rights and responsibilities. First, the man signing the form assumed the parental duty of support. Second, the notice provided that Ohio statutes limited the signatories' right to rescind it:

> Both parents who sign this paternity affidavit waive any right to bring a court action to establish paternity pursuant to sections 3111.01 to 3111.18 of the Revised Code

---

[2] *Bauermeister Deaver Ecol. v. Waste Mgmt. Co.*, 290 Neb. 899, 863 N.W.2d 131 (2015).

[3] *Id.*

or make a request for an administrative determination of a parent and child relationship pursuant to section 3111.38 of the Revised Code, other than a court action filed for purposes of rescinding the paternity affidavit.

The notice explained that in some circumstances, a signatory could seek an administrative rescission of the acknowledgment within 60 days. A signatory could also file a court action to rescind it for fraud, duress, or mistake of fact. But a signatory had to commence a court action after the 60-day period for requesting an administrative rescission expired and within 1 year after "the paternity affidavit becomes final pursuant to sections 2151.232, 3111.25 or 3111.821" of Ohio's statutes. The form also provided that if the law presumed another man to be the father, the parties could not sign a paternity acknowledgment. The notice defined a presumed father to include a man who had signed an acknowledgment of paternity that was on file with the "Ohio Department of Job & Family Services" but was not yet final. Finally, the notice provided that either parent had the right to request genetic testing at no charge instead of signing the acknowledgment.

Heather and Jesse were later named as Jaelyn's mother and father on her birth certificate. It was recorded in Ohio's office of vital statistics on June 3, 2013.

### 2. Jesse's Relationship With Heather and Jaelyn

In the Nebraska adoption proceeding, the county court received Jesse's affidavit for deciding whether he could intervene. In the affidavit, Jesse stated some background facts regarding his relationship with Heather and Jaelyn. Jesse met Heather in Omaha in June 2012, and they began living together in July. That month, they learned that Heather was pregnant. Jesse stated that he supported her financially and emotionally throughout the pregnancy. In March 2013, they moved to Ohio to live with Jesse's parents. Jesse was present at Jaelyn's birth and took an active role in caring for her.

According to Jesse, Heather left Jaelyn with Jesse and his parents about the middle of September 2013 to pursue a relationship with a man she met on the Internet. Before she left, she signed the paperwork to give Jesse's mother custody of Jaelyn. But at the end of September, Heather returned and asked to take Jaelyn for a weekend visit. She never returned Jaelyn. Jesse visited Jaelyn once in Cleveland, Ohio, about 2 weeks later, but Heather would not allow Jaelyn to return with him. Later, Jesse learned that Heather had obtained a dismissal of an Ohio case to give custody of Jaelyn to Jesse's mother. Instead, she returned to Nebraska with Jaelyn. She refused to allow Jesse to see Jaelyn, and at some point, she blocked his telephone calls. The last time Jesse communicated with Heather was on Christmas in 2013.

In Jesse's motion to dismiss the adoption proceeding, he attached a copy of a letter from Heather to a judge in the Ohio Court of Common Pleas. In the letter, Heather requested a dismissal of the custody petition for Jaelyn. She stated that she had decided to retain custody of Jaelyn and return to Nebraska. The letter was dated October 7, 2013. Another attachment showed that the Ohio court dismissed the custody case on the same day.

### 3. Adoption Notification
### and Commencement of
### Judicial Proceedings

In January 2014, Jesse received adoption paperwork from Heather's Nebraska attorney, Kelly Tollefsen. The letter stated that Heather had identified Jesse as a possible biological father and intended to relinquish Jaelyn for an adoption. It informed him that if he intended to claim paternity and seek custody, he should obtain his own attorney, or he could sign the enclosed forms for relinquishing Jaelyn and consenting to her adoption. In his affidavit, Jesse stated that he had contacted Tollefsen but that she would not provide him with any information about the adoption. He could not afford an

attorney and did not obtain legal assistance in Nebraska until later that spring.

In June 2014, Jesse filed a complaint in Lancaster County District Court for a writ of habeas corpus and a declaratory judgment. In that action, he challenged the constitutionality of Nebraska's adoption statutes that permitted Jaelyn's adoption without his consent. And he claimed that Nebraska must give full faith and credit to Ohio's paternity determination. On July 22, Jesse sued for custody in the Ohio Court of Common Pleas. On July 30, Jesse filed an objection to the adoption of Jaelyn and a request for notice of any adoption proceeding for Jaelyn in Douglas County Court. In August, Tylee H., the prospective adoptive parent, filed a petition to adopt Jaelyn in Douglas County Court.

### 4. Ohio Court Proceedings

A March 2015 order from the Ohio Court of Common Pleas shows that in September 2014, Tylee moved to intervene in Jesse's custody action (after she filed a Nebraska petition for adoption in August). Tylee sought a dismissal of Jesse's custody case, but the Ohio court continued the matter and ordered a home study. In October, Tylee moved for a finding that Jesse was not Jaelyn's biological father and asked for a dismissal. The Ohio court again continued the matter and ordered the parties to file briefs. In February 2015, Tylee filed a notice of a final adoption in Nebraska. The Douglas County Court entered the Nebraska adoption decree on January 15, 2015.

The Ohio court stated that Jesse's rights regarding an adoption were established by the acknowledgment of paternity. The court concluded that "[p]aternity is not an issue because [Jesse] is the legal father of Jaelyn . . . . This court is curious as to why this child was adopted in another jurisdiction when this matter has been pending since July 22, 2014." It continued the matter for "pre-trial on the issue of custody." At oral arguments before this court, Jesse's attorney stated that the Ohio custody proceeding was still pending.

## 5. County Court Proceedings

### (a) Parties' Pleadings

In Jesse's objection to the adoption, he alleged that under Ohio law, his acknowledgment was a determination of his paternity as though Jaelyn were born to him during marriage. He believed that a person named "Tylee" or someone else would seek Jaelyn's adoption and would claim that he was a putative father. He objected to any adoption and requested notice of any adoption petition or hearing. He also alleged that he had filed a habeas proceeding in district court to challenge Jaelyn's detention. He requested that the county court hold any adoption petition in abeyance until the district court resolved the claims in his habeas proceeding.

As stated, in August 2014, Tylee filed an adoption petition in Douglas County Court. She alleged that Heather had relinquished Jaelyn in February 2014 and that Jaelyn had lived with Tylee for more than 6 months. Tylee alleged that Jesse was not Jaelyn's biological father. She claimed that she did not need his consent because he had not filed an administrative request for notification of an adoption or an administrative objection to an adoption. She acknowledged that Jesse had filed a custody action in Ohio but claimed that the Ohio court lacked jurisdiction for unstated reasons. She requested that the court order Jesse to submit to genetic testing.

In September 2014, Jesse moved to intervene in the adoption proceeding. He attached a copy of his paternity acknowledgment. He alleged that the U.S. Constitution and Nebraska's § 43-1406 required the county court to give full faith and credit to his paternity determination under Ohio law. Citing this court's decision in *Cesar C. v. Alicia L.*,[4] he alleged that he was also Jaelyn's legal parent under Nebraska law. Finally, he alleged that he had a constitutionally protected relationship with Jaelyn that required his consent to her adoption and that

_____

[4] *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

he had not given it. He cited the case number for his pending custody case in Ohio and again informed the court of the habeas corpus proceeding in district court.

Tylee objected to Jesse's motion to intervene. She alleged that Heather had named two possible biological fathers and that genetic testing had shown that Jaelyn's biological father was Tyler T., who had relinquished his parental rights. And Nebraska's adoption statutes require consent only from a biological father. She alleged that Jesse's paternity acknowledgment created only a rebuttable presumption of paternity and that genetic testing had rebutted the presumption. Because Nebraska's statutes did not require Jesse's consent, she claimed that he did not have sufficient interest to intervene.

Jesse responded with a motion to dismiss the adoption proceeding. He alleged that the court lacked subject matter jurisdiction and could not grant an adoption because he had not consented to it. He alleged that he was a necessary party because of his constitutionally protected relationship with Jaelyn. Additionally, he alleged that under Ohio law, Heather had waived her right to a judicial paternity determination because she signed the paternity acknowledgment and did not seek a rescission. He again alleged that the court must give full faith and credit to Ohio's paternity determination. He claimed that Tylee and her attorney had committed a fraud on the court by characterizing him as a putative father.

### (b) Adoption Hearings

At the hearing on Jesse's motion to intervene, the court received Heather's February 2014 relinquishment of Jaelyn specifically for adoption by Tylee. It also admitted evidence that Jesse had filed an action in district court. He argued that the district court therefore had jurisdiction over the matter. Tylee countered that the county court had exclusive jurisdiction over an adoption.

Jesse objected to genetic testing results that showed Tyler was Jaelyn's biological father. He argued that the evidence

lacked foundation and was irrelevant because he was Jaelyn's legal father. He argued that Nebraska's putative father statutes do not apply to a child's legal father and that for such men, an adoption proceeding is a collateral attack on a prior paternity determination.

Tylee argued that neither Jesse's paternity acknowledgment nor Jaelyn's birth certificate gave Jesse standing to block Jaelyn's adoption. She argued that under Nebraska law, he was only a putative father whose consent was not required. Tylee acknowledged that Nebraska law excuses an adjudicated father from the 5-day time limit for filing an administrative objection[5] and that he can still file an objection in county court. But she argued that if genetic testing excludes that man as the biological father, he still has no right to block an adoption. She contended that there was no prior "judgment" to collaterally attack. The court admitted the testing results.

### (c) County Court's Orders

In December 2014, the county court denied Jesse's motion to intervene. The court stated that Jesse had never filed an administrative objection, never contested the adoption in county court, and never asked a county court to determine whether his consent was required. It concluded that the genetic testing results were relevant and admissible. It reasoned that Neb. Rev. Stat. §§ 43-104.05(3) and 43-104.22(11) (Reissue 2008) render a man's consent to an adoption unnecessary if a court determines that he is not the child's biological father.

The court reasoned that the putative father statutes, read as a whole, affirmed this conclusion. It noted that under Neb. Rev. Stat. § 43-104.12 (Reissue 2008), the statutory notice of the mother's intent to relinquish custody for an adoption only informs a "biological father or possible biological fathers" of his right to deny paternity or relinquish custody and consent to

---

[5] See *In re Adoption of Jaden M.*, 272 Neb. 789, 725 N.W.2d 410 (2006). See, also, Neb. Rev. Stat. §§ 43-104.01(7) and 43-104.25 (Reissue 2008).

an adoption. And the men who must receive this notice include a child's adjudicated father or a man listed on the child's birth certificate as the father.[6] Similarly, the notice only informs the recipient of the rights of a biological father or "possible biological fathers."[7]

The county court correctly recognized that we have held the 5-day time limit for filing an administrative objection does not apply to adjudicated fathers or undisputed biological fathers who have an established familial relationship with their child.[8] But it concluded that § 43-104.22(11) still governed whether a legal father must consent to an adoption. It determined that § 43-104.22(11) made Jesse's consent unnecessary because he was not the biological father. Therefore,

> this Court need not determine whether [Jesse] should be called a putative (possible) or adjudicated ("legal") father, or whether [he] did or did not establish a familial relationship with [Jaelyn] (a fact which is in dispute), because section 43-103.22 applies no matter which word is used to describe [Jesse's] status as to this minor child born out of wedlock.

Accordingly, the county court determined that Jesse lacked standing to block the adoption because he had no interest that entitled him to intervene. In January 2015, the court entered a decree of adoption.

## III. ASSIGNMENTS OF ERROR

Jesse assigns that the court erred in: (1) denying Jesse's motion to intervene; (2) failing to give Ohio's paternity determination full faith and credit; (3) concluding that his consent to the adoption was unnecessary; (4) admitting genetic testing results and disestablishing his paternity under §§ 43-104.05(3)

---

[6] See § 43-104.12(1) to (3).

[7] See Neb. Rev. Stat. § 43-104.13 (Reissue 2008).

[8] See, *In re Adoption of Corbin J.*, 278 Neb. 1057, 775 N.W.2d 404 (2009); *In re Adoption of Jaden M., supra* note 5.

and 43-104.22(11); (5) excluding evidence of his established familial relationship and jurisdiction; (6) determining that it had jurisdiction over the adoption; and (7) entering a decree of adoption.

Additionally, Jesse assigns (1) that Nebraska's putative and unwed father statutes violate the Due Process and Equal Protection Clauses of the U.S. and Nebraska Constitutions and (2) that these constitutional guarantees require a trial court to appoint counsel for indigent parents who object to the involuntary termination of their parental rights through adoption proceedings.

## IV. STANDARD OF REVIEW

[1-3] A jurisdictional issue that does not involve a factual dispute presents a question of law.[9] The meaning and interpretation of a statute present questions of law.[10] When reviewing questions of law, we resolve the questions independently of the lower court's conclusions.[11]

## V. ANALYSIS

[4-6] Before deciding the merits of an appeal, an appellate court must determine if it has jurisdiction.[12] If the court from which a party appeals lacked jurisdiction, then the appellate court acquires no jurisdiction.[13] But we have the power to determine whether we have jurisdiction over an appeal and to correct jurisdictional issues even if we do not have jurisdiction to reach the merits.[14]

---

[9] *Pearce v. Mutual of Omaha Ins. Co., ante* p. 277, 876 N.W.2d 899 (2016).

[10] See *Adair Asset Mgmt. v. Terry's Legacy, ante* p. 32, 875 N.W.2d 421 (2016).

[11] *Pearce, supra* note 9.

[12] See *In re Interest of Jackson E., ante* p. 84, 875 N.W.2d 863 (2016).

[13] *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015).

[14] See *id.*

## 1. County Court Incorrectly Ignored or Failed to Properly Resolve Jurisdictional Questions

Jesse's pleadings and attachments in county court should have alerted the county court to possible jurisdictional issues under state and federal law. First, both parties alleged that Jesse had commenced a custody dispute in Ohio that was still pending. These allegations raised a jurisdictional issue under the federal Parental Kidnapping Prevention Act of 1980.[15] In particular, under that federal act, the record fails to show that the court determined whether the Ohio court was properly exercising jurisdiction over a custody dispute involving these parties.

Second, Jesse alleged that he had previously commenced a habeas and declaratory judgment action in district court to challenge Jaelyn's detention. This allegation raised an issue under the jurisdictional priority doctrine.[16]

[7] The county court apparently agreed with Tylee that it had exclusive jurisdiction to decide all matters related to adoption proceedings. It is true that under Neb. Rev. Stat. § 43-102 (Reissue 2008), a county court or juvenile court will ordinarily have jurisdiction over an adoption proceeding. But district courts have inherent equity jurisdiction to resolve custody disputes.[17] And they have jurisdiction over habeas proceedings challenging adoption proceedings.[18] Accordingly, district courts have jurisdiction over a related declaratory

---

[15] See 28 U.S.C. § 1738A(g) (2012).

[16] See, *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014); *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013).

[17] See *Charleen J., supra* note 16.

[18] See, e.g., *Monty S. & Teresa S. v. Jason W. & Rebecca W.*, 290 Neb. 1048, 863 N.W.2d 484 (2015); *Brett M. v. Vesely*, 276 Neb. 765, 757 N.W.2d 360 (2008); *Flora v. Escudero*, 247 Neb. 260, 526 N.W.2d 643 (1995); *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992); *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986).

judgment action challenging the constitutionality of Nebraska adoption statutes.[19] In short, the county court's statutory jurisdiction over the adoption petition did not give it exclusive jurisdiction to resolve challenges to Nebraska's adoption statutes that could have foreclosed the adoption. In both courts, Jesse claimed that his relationship with Jaelyn was constitutionally protected and that Nebraska was required to give full faith and credit to Ohio's determination of his paternity. So, the separate proceedings raised the same material issues and involved the same parties. And Jesse filed the action in district court first.

We point out these jurisdictional errors to guide county courts in future adoption cases. But our decision rests on the jurisdictional question that the county court did not address. It failed to determine under § 43-1406 whether it must give full faith and credit to Ohio's determination that Jesse's consent was required. Because § 43-1406 requires Nebraska to recognize Ohio's paternity determination, the court lacked jurisdiction to decree an adoption without his consent.

## 2. Recognizing Jesse's Parental Rights Is Not Contrary to Nebraska's Public Policy

Section 43-1406(1) requires this state to give full faith and credit to another's state's paternity determination: "A determination of paternity made by any other state, whether established through voluntary acknowledgment, genetic testing, or administrative or judicial processes, shall be given full faith and credit by this state."

Tylee contends that Nebraska should not recognize Jesse's parental rights under Ohio's statutes. She argues that doing so would conflict with the public policy reflected in Nebraska's adoption statutes. She claims that a distinction exists between

---

[19] See Neb. Rev. Stat. §§ 25-21,149 (Reissue 2008) and 25-21,150 (Cum. Supp. 2014).

giving effect to another state court's judgment and giving effect to another state's statutes that are contrary to Nebraska's adoption statutes. She contends that the doctrine of comity is inappropriate here because § 43-104.22(11) makes a legal father's consent to an adoption irrelevant if he is not the biological father. And she contends that Jesse's legal status cannot trump the desires of Jaelyn's natural mother and father to permit an adoption.

Leaving aside the irony of Tylee's argument that the rights of an uninvolved and unsupportive biological father are more significant than those of a legal father who has financially supported his child and participated in rearing her, she misstates Nebraska's public policy.

[8] "The Full Faith and Credit Clause of U.S. Const. art. IV, § 1, provides in part that 'Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State.'"[20] A "judgment rendered in a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment."[21]

[9] It is true that we have recognized Nebraska is not constitutionally required to give effect to a sister state's statutes that are contrary to the public policy of this state:

[T]he Full Faith and Credit Clause does not compel a state to substitute the statutes of another state for its own statutes, with regard to "judgments, however, the full faith and credit obligation is exacting." . . . [A] "forum state need not give application to the *statute* of another state where the *statute* is in conflict with the laws or policy of the forum[.]" . . . [W]hile a Nebraska court would not be required to grant an adoption pursuant to California statutes when such adoption would not be permitted under

---

[20] *In re Trust Created by Nixon*, 277 Neb. 546, 549-50, 763 N.W.2d 404, 408 (2009).

[21] *Id.* at 550, 763 N.W.2d at 408.

Nebraska statutes, a Nebraska court may not refuse to recognize the judgment consisting of an adoption decree validly entered by a California court.[22]

Revealingly, however, Tylee never discusses § 43-1406(1) in her brief. And we cannot conclude that recognizing Jesse's parental rights under Ohio law is contrary to Nebraska's public policy when the Legislature, through § 43-1406(1), specifically requires this recognition.

### (a) Recognizing a Person's Relationship Status Under a Sister State's Laws Is Not Limited to Judgments

Section 43-1406(1)'s requirement that Nebraska recognize a sister state's paternity determination mirrors Neb. Rev. Stat. § 42-117 (Reissue 2008). That statute requires courts to recognize legal marriages in other states even if they would be invalid in Nebraska: "All marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, shall be valid in all courts and places in this state."

And usually, no judgment exists in a sister state finding a valid common-law marriage. Instead, Nebraska courts have applied the law of the sister state to determine a party's legal marital status.[23] So, our common-law marriage cases illustrate that resolving the full faith and credit issue does not always turn on whether a judgment conferring a legal status exists. This is consistent with recognizing another state's "[p]ublic [a]cts."[24]

Similarly, in a will dispute, we applied the law of a sister state to conclude that a parent-child relationship existed under

---

[22] *Id.* at 551, 763 N.W.2d at 409 (citation omitted) (emphasis in original).

[23] See, *Spitz v. T.O. Haas Tire Co.*, 283 Neb. 811, 815 N.W.2d 524 (2012); *Randall v. Randall*, 216 Neb. 541, 345 N.W.2d 319 (1984); *In re Estate of Schenck*, 5 Neb. App. 736, 568 N.W.2d 567 (1997). See, also, *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

[24] See U.S. Const. art. IV, § 1.

a California statute that created that legal status if a man had publicly acknowledged a child as his own and received the child into his family.[25] So, we have previously recognized a man's legal status as a child's father that rested on a statutory paternity determination, not a court's judgment.

And contrary to Tylee's arguments, in *Cesar C. v. Alicia L.*,[26] we recognized that a paternity acknowledgment signed in Nebraska confers legal parental rights the same as a judgment of paternity. We turn to that decision.

### (b) An Acknowledged Father in Nebraska Is Also a Child's Legal Father

[10] In Nebraska, as in Ohio, a paternity acknowledgment operates as a legal finding of paternity after the rescission period has expired.[27] At that point, the acknowledged father is the child's legal father, not a presumed father. And under *Cesar C.*, a father whose paternity is established by a final, voluntary acknowledgment has the same right to seek custody as the child's biological mother, even if genetic testing shows he is not the biological father.[28]

There, the mother was arrested on drug charges after she and the acknowledged father signed a paternity acknowledgment; the father retained custody while she was in prison. After she was released, she took the child without his consent. He sought a judgment of paternity and child support from the mother. The mother countered by filing a separate action in which she obtained an order for genetic testing, which excluded him as the biological father. She then sought summary judgment in the acknowledged father's paternity action. The trial court determined that the mother had a superior right to custody because

---

[25] See *Riddle v. Peters Trust Co.*, 147 Neb. 578, 24 N.W.2d 434 (1946).

[26] *Cesar C., supra* note 4.

[27] See Neb. Rev. Stat. §§ 43-1402 and 43-1409 (Reissue 2008).

[28] See *Cesar C., supra* note 4.

she was not unfit, but awarded the father visitation rights and ordered him to pay child support.

[11] We reversed that judgment. We found plain error because the trial court failed to give the proper legal effect to the paternity acknowledgment. We explained that under § 43-1409, after the rescission period expired, the acknowledgment became a legal finding, and the mother had not challenged that finding for fraud, duress, or material mistake of fact. We noted that the Legislature added the "'legal finding'" provision to comply with a federal mandate as a condition for financial aid.[29] And we explicitly stated that under § 43-1402, "establishment of paternity by acknowledgment is the equivalent of establishment of paternity by a judicial proceeding."[30] We concluded that the genetic testing results were irrelevant and that the court erred in failing to treat the action as a custody and support dispute between two legal parents.

Tylee incorrectly argues that *Cesar C.* is distinguishable because the father filed a paternity action. He was not trying to establish his paternity for the first time in that action. He was asking the court to recognize his statutory legal finding of paternity, return his child, and impose child support obligations on the mother. The important point is that we held the paternity acknowledgment gave him the same right to seek custody of his child as the mother, despite genetic testing showing that he was not the biological father. We did not limit that holding to a custody dispute between the signatories of an acknowledgment. Instead, we relied on § 43-1409's explicit statement that an acknowledgment becomes a legal finding after the rescission period. And under that holding, it would be a strange result if a legal father nonetheless had no right to seek custody if the mother unilaterally decided to relinquish her child for adoption. But we need not decide that issue here.

---

[29] *Id*. at 988, 800 N.W.2d at 256.

[30] *Id.* at 986, 800 N.W.2d at 255.

We agree with Jesse that if he had voluntarily acknowledged his paternity in Nebraska, we would recognize his status as Jaelyn's legal father. In *Cesar C.*, the acknowledged father's equal right to seek custody was directly tied to his paternity acknowledgment. To hold that recognizing Jesse's rights under Ohio's statutes is contrary to Nebraska's public policy would directly conflict with our recognition of an acknowledged father's parental rights under Nebraska's statutes.

[12-14] The Full Faith and Credit Clause requires states to give the same effect to a judgment in the forum state that it has in the state where the court rendered the judgment.[31] Section 43-1406(1) extends that requirement for judgments to a sister state's paternity determination established through a voluntary acknowledgment. We note that most states probably have some version of § 43-1406(1) because Congress has mandated that states adopt this provision to obtain grants to provide aid to needy families.[32] The federal statute ensures uniform recognition and enforcement of child support orders based on a foreign state's determination of a man's paternity.[33] Because the Legislature complied with this requirement, it could not have simultaneously intended to give it a restricted meaning that forecloses courts from applying it to adoption proceedings. So whether a paternity acknowledgment in a sister state gives an acknowledged father the right to block an adoption in Nebraska depends upon whether the acknowledgment confers that right in the state where it was made.[34] In Ohio, Jesse has that right.

---

[31] *In re Trust Created by Nixon, supra* note 20.

[32] See, 42 U.S.C. § 666(a)(5)(C)(iv) (2012); *Burden v. Burden*, 179 Md. App. 348, 945 A.2d 656 (2008); 23 Am. Jur. 2d *Desertion and Nonsupport* §§ 73 and 74 (2013).

[33] See, e.g., *H.M. v. E.T.*, 14 N.Y.3d 521, 930 N.E.2d 206, 904 N.Y.S.2d 285 (2010).

[34] See *Matter of Gendron*, 157 N.H. 314, 950 A.2d 151 (2008). See, also, *In re Mary G.*, 151 Cal. App. 4th 184, 59 Cal. Rptr. 3d 703 (2007); *Burden, supra* note 32.

### 3. Ohio Parentage Statutes

Ohio's parentage statutes[35] create a parent-child relationship that does not require a court order. Under § 3111.02(A), the "parent and child relationship between a child and the natural father of the child may be established by an acknowledgment of paternity as provided in sections 3111.20 to 3111.35." Under § 3111.01(A), the term

"parent and child relationship" means the legal relationship that exists between a child and the child's natural or adoptive parents and upon which [§§ 3111.01 to 3111.85] and any other provision of the Revised Code confer or impose rights, privileges, duties, and obligations. The "parent and child relationship" includes the mother and child relationship and the father and child relationship.

Under § 3111.03, a man is presumed to be a child's natural father when an acknowledgment of paternity has been properly filed but has not yet become final. But under § 3111.25, an

acknowledgment of paternity is final and enforceable *without ratification by a court* when the acknowledgment has been filed with the office of child support, the information on the acknowledgment has been entered in the birth registry, and the acknowledgment has not been rescinded and is not subject to possible rescission pursuant to section 3111.27 . . . .

(Emphasis supplied.)

And under § 3111.27, either signatory can seek an administrative rescission of the acknowledgment if he or she requests a paternity determination within 60 days of the last signature. Under Ohio's § 3111.26, "[a]fter an acknowledgment of paternity becomes final and enforceable, the child is the child of the man who signed the acknowledgment of paternity, as though born to him in lawful wedlock." Here, neither party asked for an administrative paternity determination within 60 days of

---

[35] See Ohio Rev. Code Ann. §§ 3111.01 to 3111.85 (LexisNexis 2008).

signing the acknowledgment on April 16, 2013. Heather acquiesced in the establishment of Jesse's paternity despite her later acknowledgment that another man could have been Jaelyn's father. So after June 16, 2013, neither Heather nor Jesse could seek an administrative rescission under § 3111.27. It was a final paternity determination.

Under Ohio's § 3111.38.1, if neither signatory requested an administrative paternity determination within the 60-day time limit, Ohio's paternity statutes preclude bringing a paternity action, apart from specified exceptions. But these exceptions do not include disestablishing a man's paternity in an adoption proceeding.

To the contrary, Ohio statutes require a legal father's consent to an adoption. Under § 3107.06,

> [u]nless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:
>
> (A) The mother of the minor;
>
> (B) The father of the minor, if any of the following apply:
>
> . . . .
>
> (4) He acknowledged paternity of the child and that acknowledgment has become final . . . .[36]

Section 3107.07 lists exceptions to the consent requirement.[37] It excludes a putative father from the consent requirement if he failed to comply with the putative father registration requirements. But for legal parents, the exceptions to the consent requirement are more limited and do not appear to apply here.

Finally, Ohio's § 3111.28 permits a court action to rescind a paternity acknowledgment for "fraud, duress, or material mistake of fact." The action can be brought by either of the

---

[36] Ohio Rev. Code Ann. § 3107.06 (LexisNexis Supp. 2009).

[37] Ohio Rev. Code Ann. § 3107.07 (LexisNexis Supp. 2009).

signatories, a man presumed to be the father, or a person who did not sign the acknowledgment, presumably including the actual biological father if he was not a signatory. But a signatory must bring the action within 1 year of the acknowledgment's becoming final. Heather never brought an action to rescind the acknowledgment. So, she has lost that right and Ohio law precludes her from disestablishing Jesse's paternity in an adoption proceeding.

In sum, under Ohio's statutes, Jesse is Jaelyn's father, not her presumed or putative father. And he has the right to give or refuse his consent to her adoption. Under § 43-1406(1), Nebraska courts must extend full faith and credit to Ohio's determination of Jesse's paternity and his accompanying rights to withhold his consent to Jaelyn's adoption. So, Nebraska is not a sanctuary state to avoid the law of the state where the child was born. Permitting this adoption would defeat the purpose of § 43-1406(1), which requires Nebraska to give full faith and credit to Ohio's act. The county court erred in failing to recognize Jesse's legal status and apply Ohio's law to determine his parental rights.

### 4. Nebraska's Statutes Do Not Permit County Courts to Disestablish a Legal Father's Paternity Through an Adoption Decree

[15] Under the general intervention statute,[38] to be entitled to intervene in an action, an intervenor must have a direct and legal interest. The intervenor must lose or gain by the direct operation and legal effect of the judgment that may be rendered in the action.[39] The county court relied on §§ 43-104.05(3) and 43-104.22(11) to conclude that Jesse's consent to Jaelyn's adoption was not required. But we conclude that these statutes do not authorize a county court to

---

[38] Neb. Rev. Stat. § 25-328 (Reissue 2008).

[39] See *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011).

disestablish an acknowledged father's parental rights under another State's paternity determination.

Section 43-104.05 sets out the requirements for a putative father's petition to establish paternity of his child born out of wedlock. Under this section, a putative father can only file such a petition if he previously filed an administrative objection to a child's adoption within 5 days of the child's birth or receiving notice of the mother's intent to relinquish custody. At that proceeding, if the mother challenges the putative father's paternity, the court can order genetic testing and determine that his consent to an adoption is not required under § 43-104.22(11). Similarly, Neb. Rev. Stat. § 43-104(4) (Reissue 2008) provides that "[c]onsent shall not be required of an adjudicated or putative father who is not required to consent to the adoption pursuant to section 43-104.22." But Jesse is neither an adjudicated father nor a putative father. He is an acknowledged father.

We have stated that "to terminate a father's rights through an adoption procedure, the consent of the adjudicated father of a child born out of wedlock is required for the adoption to proceed unless the Nebraska court having jurisdiction over the custody of the child determines otherwise, pursuant to § 43-104.22."[40] That section sets out 11 circumstances under which consent to an adoption is not required from "an adjudicated biological father or putative biological father of a minor child born out of wedlock." Six subsections in § 43-104.22 refer to a "father," two refer to a "putative father," and one refers to "an adjudicated biological father." Section 43-104.22(6) eliminates the consent requirement if the child "was conceived as a result of a nonconsensual sex act or an incestual act." Only the last one, § 43-104.22(11), refers to a "man": A man's consent to an adoption is not required if "[t]he man is not, in fact, the biological father of the child."

---

[40] *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 623, 843 N.W.2d 820, 826 (2014).

[16] But we conclude that Jesse is not a "man" within the meaning of § 43-104.22(11). He is Jaelyn's legal father under Ohio law. To hold otherwise would be inconsistent with the requirement under § 43-1406(1) that Nebraska give full faith and credit to another state's paternity determination. As we have explained, to do that, we must look to the effect of that determination under Ohio law, which gives an acknowledged father the full rights of a natural father who can withhold consent to an adoption. And in Ohio,[41] as in Nebraska,[42] the statutory determination of Jesse's paternity has the effect of a judgment.

[17] For judgments, collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter.[43] Only a void judgment is subject to collateral attack.[44] The same rules apply to a voluntary acknowledgment of paternity that has the same effect as a judgment. Tylee has not attacked Jesse's paternity determination for procedural or jurisdictional defects, nor do we see any grounds for such a challenge. We conclude that the court erred in determining that §§ 43-104.05 and 43-104.22 authorized it to forgo Jesse's consent.

Although Jesse urges us to address his due process and equal protection claims, we decline to do so. Jesse concedes that he did not explicitly raise his due process challenges to Nebraska's adoption statutes in the county court, and he did not raise an equal protection challenge at all. But he claims that he was unfairly deprived of an opportunity to raise these issues because the county court did not allow him to intervene.

---

41 See § 3111.13.

42 See *Cesar C., supra* note 4, citing § 43-1409.

43 *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

44 *Id.*

[18] An appellate court will generally not decide a constitutional issue that was not presented to the trial court.[45] We recognize that in Jesse's motion to intervene, he claimed his familial relationship with Jaelyn was constitutionally protected. But because we conclude that § 43-1406 requires Nebraska to give full faith and credit to Ohio's paternity determination, we need not reach Jesse's constitutional claims. And contrary to Jesse's arguments, they will not recur on remand because we have determined that the county court must vacate its decree. Although they may recur in future cases, the Legislature may yet address these issues statutorily, making a constitutional analysis unnecessary.

Similarly, Jesse's claim that he was entitled to appointed counsel in an involuntary adoption proceeding to terminate his parental rights rests on his constitutional claims and was not presented to the trial court. Accordingly, we do not address that issue here.

## VI. CONCLUSION

We conclude that the county court erred in failing to give full faith and credit to Ohio's determination of Jesse's paternity. Section 43-1406(1) requires Nebraska to recognize his status, the same as if an Ohio court had entered a judgment of paternity. And full faith and credit means that Nebraska courts must give Jesse's paternity the same effect that it would have in Ohio. Because Jesse's consent is required under Ohio law, the county court could not disestablish his paternity without his consent in Nebraska. Because we conclude that § 43-1406 requires Nebraska to give full faith and credit to Ohio's paternity determination, we do not reach Jesse's constitutional challenges to Nebraska's statutes or his claim that he was entitled to appointed counsel to challenge the adoption.

---

[45] See *Lindner v. Kindig*, 285 Neb. 386, 826 N.W.2d 868 (2013).

We conclude that the adoption decree is invalid, and therefore, we reverse the judgment and remand the cause with directions for the county court to vacate its decree. We are, of course, sympathetic to the heartache that undoing these errors will cause the parties after this much time. But we cannot ignore our duty to uphold Jesse's parental rights under Ohio law.

Because we conclude that the court erred in exercising jurisdiction over this adoption petition, we do not set out instructions here for custody determinations going forward. Instead, we instruct the district court to resolve these issues in the companion case.

REVERSED AND REMANDED WITH
DIRECTIONS TO VACATE.

STACY, J., not participating.